IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RAYMOND BROADNAX, #176710,  )
                                                       )
         Plaintiff,                        )
                                                       )
v.                                                     )          CASE NO. 2:11-CV-1082-WKW
                                                       )                      [WO]
                                                       )
BILL WYNNE, *et al.*,                      )
                                                       )
        Defendants.                    )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Raymond Broadnax ["Broadnax"], an indigent state inmate, on February 9, 2012. In this complaint, Broadnax alleges that his parole consideration date was improperly delayed from May 25, 2011, until June 29, 2011.  Broadnax further challenges the constitutionality of the decision to deny him parole issued by members of the Alabama Board of Pardons and Paroles as a result of this hearing and the conditions of confinement to which he has been subjected since this denial of parole.  The defendants in this cause of action are Bill Wynne, Robert Longshore and Cliff Walker, members of the Alabama Board of Pardons and Parole, Kim Thomas, Commissioner of the Alabama Department of

Corrections, and David Barber, a former District Attorney for Jefferson County, Alabama.[1] Broadnax seeks issuance of declaratory relief, a new parole consideration hearing before an independent body that will not utilize his criminal history in the decision-making process and monetary damages. *Amended Complaint - Doc. No. 14* at 4.

The defendants filed special reports, supported by relevant evidentiary materials, addressing Broadnax's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment. *Order of April 25, 2012 - Doc. No. 40.* Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof and Broadnax's responses in opposition to the reports, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine

---

[1] Although Broadnax identifies the former district attorney as David Barbour, this defendant's true name is David Barber. For purposes of this Recommendation and in the interest of clarity, the court will refer to this defendant by his correct name.

dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, those cases citing the prior versions of the rule remain equally applicable to the current rule.

summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of [parole] authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motions for summary judgment, Broadnax is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not

suffice to oppose a motion for summary judgment. *Holifield*, 115 F.3d at 1564 n.6 (A plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363

F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the

nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Broadnax fails to demonstrate a requisite genuine dispute of material fact as is necessary to preclude summary judgment.

## III.  RELEVANT MATERIAL FACTS

In 1994, Broadnax was convicted of murder and sentenced to life imprisonment for this conviction. At the time Broadnax filed the instant action, he had been considered for parole on two occasions, in the latter part of 2005 and in June of 2011, but was denied parole after each parole consideration hearing. Defendant Barber submitted a letter to the Parole Board prior to the 2005 parole consideration hearing in which he requested that the Board deny Broadnax release on parole "due to the heinous nature of the crime for which [Broadnax] had been convicted." *Exhibit 1 in Support of Defendant Barber's Special Report - Doc. No. 35-1.* In this letter, Barber set forth the circumstances of Broadnax's

murder conviction which indicated that Broadnax fired several shots at the victim as the victim fled the scene striking him "three times, twice in the back and once in the head . . . . He then callously left [the victim's] lifeless body lying out in the open while he hid the weapon [at a separate location] and then returned to the scene of the crime, only to go inside the apartment to sleep." *Exhibit 3 in Support of Defendant Barber's Special Report - Doc. No. 35-3* at 1-2. Deputy District Attorney T. Michael Anderton appeared at Broadnax's June 29, 2011 at which time he likewise "requested that . . . parole be denied due to the heinous nature" of the murder. *Exhibit 2 in Support of Defendant Barber's Special Report - Doc. No. 35-2.* The evidentiary materials submitted by the parole defendants demonstrate that the denial of parole occurred because Broadnax failed to persuade members of the Parole Board that he is an acceptable risk for release on parole. *Exhibits B, C and D in Support of the Parole Defendants' Special Report - Court Doc. No. 39-1* at 2-7.

## IV.  ABSOLUTE IMMUNITY

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900,  908, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see*

> *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Id.*; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## V.  MONETARY DAMAGES - INDIVIDUAL CAPACITY CLAIMS

Broadnax seeks monetary damages from defendants Wynne, Longshore and Walker for actions relative to the denial of parole.  This Circuit has long recognized that parole board officials are entitled to quasi-judicial immunity from suits requesting damages based upon decisions to grant, deny or revoke parole.  *Fuller v. Ga. State Bd. of Pardons and Parole*, 851 F.2d 1307 (11th Cir. 1988); *Cruz v. Skelton*, 502 F.2d 1101, 1101-02 (5th Cir. 1974).  All of the actions about which Broadnax complains arose during proceedings concerning the denial of his parole in June of 2011.  Under these circumstances, the actions of parole officials are inextricably intertwined with their decision-making authority and they are therefore immune from damages.  Consequently, the plaintiff's claim for monetary damages against the parole board members in their individual capacities is due to be summarily dismissed.

## VI.  DISCUSSION OF CLAIMS

Broadnax asserts that defendant Barber and his successors in office provided false information to the Parole Board and complains that during the 2011 parole consideration process parole board members relied on this erroneous information to deny him parole. *Amended Complaint - Doc. No. 1* at 3.  Broadnax also contends that the failure to release him on parole resulted in his confinement in unconstitutional conditions, denied him equal protection and violated the Ex Post Facto Clause of the Constitution. *Id*. at 2-3.  Broadnax further alleges that the parole defendants deprived him of due process when they (i) failed to conduct his second parole consideration hearing on the originally scheduled date and delayed the hearing for a few weeks, (ii) acted arbitrarily and capriciously in determining the dates of his consideration hearings and denying him parole, (iii) did not allow him an opportunity to review his parole file and present arguments in favor of parole, (iv) failed to provide him or his family members notice of the June 29, 2011, parole consideration hearing, (v) did not provide him a reason for the denial of parole, and (v) created a liberty interest in release on parole by scheduling parole consideration hearings.  *Amended Complaint - Doc. No. 1* at 2-34.  Finally, Broadnax maintains that the defendants engaged in a conspiracy to effectuate the denial of parole.  Under applicable federal law, these claims entitle Broadnax to no relief from this court.

### A.  False Information

Broadnax alleges that defendant Barber and his successors submitted false information to the parole board for its consideration in determining his suitability for release on parole. *Amended Complaint - Doc. No. 1* at 1.[3]  He further complains that the parole defendants deprived him of due process when they relied on this information to deny him parole. *Id.*  The defendants do not admit that the information utilized in the parole decision-making process is false and categorically deny any knowing submission of or reliance on false information. *Exhibits B, C and D in Support of the Parole Defendants' Special Report - Court Doc. No. 39-1* at 2-7; *Exhibit 1 in Support of Defendant Barber's Special Report - Doc. No. 35-1*; *Exhibit 2 in Support of Defendant Barber's Special Report - Doc. No. 35-2*.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.  The appellate court, however, carefully distinguished the holding in *Monroe* from its prior decision in *Slocum*.

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.  Unlike the

---

[3] Broadnax does not identify the false information.

11

instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the instant false information claim.

The defendants maintain that the information submitted to the parole board for consideration and on which board members relied to deny Broadnax parole is correct and reliance on this information therefore did not violate the plaintiff's constitutional rights. Specifically, there is no admission by the defendants that the information utilized in denying Broadnax parole is false, incorrect or erroneous. Broadnax has failed to come forward with any evidence which indicates the defendants knowingly submitted or relied on false information during the parole consideration process. Moreover, Broadnax's conclusory assertion regarding false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir.

2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record in this case establishes that the defendants did not provide or rely on **admittedly** false information during the parole consideration process. Consequently, the Broadnax is entitled to no relief as a matter of law and entry of summary judgment in favor of the defendants is appropriate

### B. Due Process - Parole Consideration and Denial of Parole

Broadnax asserts that defendants Wynne, Longshore and Walker deprived him of fair consideration for parole in violation of his due process rights as the decision to deny parole arose from flagrant and unauthorized actions. *Amended Complaint - Doc. No. 1* at 3. In support of this assertion, Broadnax complains that the parole defendants denied him due process in determining his suitability for release on parole because they (i) failed to act in accordance with laws and regulations addressing parole eligibility, setting of parole consideration dates and scheduling of parole hearings, (ii) refused to consider statements provided by his family members, (iii) did not allow him to review his parole file or attend the parole hearing to dispute the aggravating circumstances surrounding his offense, and (iv) did not provide him a reason for the denial of parole. Broadnax's claims arising from an alleged lack of due process with respect to the parole consideration process and resulting denial of parole entitle him to no relief.

13

> The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination.  It does not contain any language that mandates parole . . . .  When the statute is framed in discretionary terms there is not a liberty interest created . . . .  Alabama parole statutes do not create a liberty interest [in parole] . . . .

*Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  This court's exhaustive review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms.[4]  The law is well settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process.' . . . [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole."  *Ellard v. Ala. Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).  Consequently, Broadnax's claim of a right to release on parole is refuted by well settled federal law.

Despite no protected liberty interest in parole, Broadnax appears to argue that the Parole Board's regulation governing parole set-off dates creates a protected liberty interest in the procedures related to parole consideration.  This claim is foreclosed by *Slocum*, 678

---

[4] Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society....

*Ala. Code* § 15-22-26.

F.2d at 940, *cert. denied*, 459 U.S. 1043 (1982), in which the Eleventh Circuit deemed such a "unique theory . . . without merit." 678 F.2d at 942. The relevant portion of the Court's opinion reads as follows:

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions . . . create a protectable entitlement to parole consideration. Specifically, petitioner cites the requirement . . . that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language . . . that the board include in the parole file "as complete information as may be practically available . . . ." If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards. Petitioner's unique theory is without merit. Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness. *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S. Ct. 308, 50 L. Ed. 2d 283 (1976). In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws. The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date." Accordingly, in the instant case petitioner['s] . . . allegation that the . . . parole board has not accorded him adequate parole consideration does not entitle him to [relief].

*Slocum*, 678 F.2d at 942.

Broadnax does not possess a liberty interest in being granted parole that is protected by the Due Process Clause of the Constitution. *Heard v. Ga. State Bd. of Pardons and*

15

*Paroles*, 222 F. App'x 838, 840 (11th Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-42; *Thomas*, 691 F.2d at 488-89.  Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness." *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions."). Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, 691 F.2d at 488-89, or the parole consideration process.  *Slocum*, 678 F.2d at 942 (there is no due process right to inspect a parole file nor does the failure to provide parole review within applicable time period or properly calculate presumptive date of release constitute a violation of due process).

Moreover, to the extent the complaint can be construed to challenge the constitutionality of setting and/or delaying a parole consideration hearing past the time mandated by governing administrative regulations, such action likewise does not run afoul of the Constitution.  Federal courts no longer ascertain whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing

"substantive limitations on official discretion" but must instead look to the nature of the deprivation to determine if a state created a liberty interest.  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  As previously noted, an Alabama inmate has no liberty interest in parole protected by the Due Process Clause.   Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,] . . . these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id*.  "Since an inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while awaiting parole consideration] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest."  *Asquith v. Dep't of Corrs.*, 186 F.3d 407, 412 (3d Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action."  *Thomas*, 691 F.2d at 489.  The parole defendants maintain they acted in accordance with state law and applicable administrative regulations governing notice when scheduling Broadnax's 2011 parole consideration hearing and denied parole to Broadnax because they were not persuaded he presented an acceptable risk for release on parole.  The decisions of the parole board members with

respect to Broadnax demonstrate reasonable and appropriate actions, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *See Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988). Broadnax has therefore failed to present any evidence indicating arbitrary or capricious actions on the part of the parole defendants. Consequently, summary judgment is due to be granted in favor of the defendants with respect to each of Broadnax's due process claims. *Harrell v. Florida Parole Comm'n*, 479 F. App'x 234, 237 (11th Cir. 2012) (holding that the plaintiff's "due process claim was properly dismissed because the decision whether to grant or deny parole is within the Commission's discretion, and [inmate] did not plausibly allege that the Commission acted arbitrarily and capriciously in denying him parole.").

### C. Equal Protection

Broadnax, an African American inmate, makes the conclusory allegation that the parole defendants violated his right to equal protection by delaying his parole consideration hearing and denying him parole when other inmates convicted of serious crimes have been timely considered and/or granted parole. *Amended Complaint - Doc. No. 1* at 2.

To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received

more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corrs.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Fla. Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact . . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case such as this one, where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required.  *Fuller v. Ga. Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the parole defendants, Broadnax bears the burden of producing evidence which would be admissible at trial sufficient to show that the actions of the defendants during his parole consideration process resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-24; *Waddell*, 276 F.3d at 1279. The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment). Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the parole board members regarding their decision to deny parole. *Anderson*, 477 U.S. at 249.

Broadnax utterly and completely fails to meet this burden as he has offered no evidence identifying any other similarly situated inmate who received more favorable treatment from the defendants, or demonstrating that the defendants subjected him to adverse treatment based on some constitutionally impermissible reason. *Harrell*, 479 F. App'x at 237 (Plaintiff entitled to no relief on equal protection claim where he "neither alleged that he was treated differently than similarly situated comparators nor that the alleged differential treatment was based on a constitutionally protected interest."). In short,

20

Broadnax sets forth no facts in support of his conclusory allegation of an equal protection violation. Even a liberal interpretation of Broadnax's *pro se* complaint does not reveal any factual basis for an equal protection claim. Furthermore, it is clear from the undisputed evidentiary materials that the parole defendants delayed Broadnax's parole consideration date solely in an effort to comply with mandatory notice requirements of state law and refused to grant Broadnax parole based on their determination, after reviewing his record, that he did not warrant release into society. *Exhibits B, C and D in Support of the Parole Defendants' Special Report - Court Doc. No. 39-1* at 2-7. In light of the foregoing, summary judgment is due to be granted in favor of the parole defendants on Broach's claim of unconstitutional discrimination in the parole consideration process.

### D.  Ex Post Facto

Broadnax contends that the denial of parole, standing alone, violates the Ex Post Facto Clause. *Amended Complaint - Doc. No. 1* at 2. This claim is without merit.

The Ex Post Facto Clause bars any law which: (1) punishes an act that was innocent at the time the act was committed; or (2) retroactively increases punishment for a crime after its commission. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990). "[T]he Clause is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (internal quotation marks and citations omitted); *Garner v. Jones*, 529 U.S. 244, 249 (2000) (The

Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission."). An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision. *Garner*, 529 U.S. at 255. "[T]he focus of the ex post facto inquiry is not ... on whether an amendment affects a prisoner's '*opportunity* to take advantage of provisions for early release,' but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Morales*, 514 U.S. at 506 n.3 (citation omitted, emphasis in original). A law or regulation that does not increase the punishment imposed upon an inmate for a criminal offense previously committed cannot violate the Ex Post Facto Clause even when applied retrospectively. *Id*. at 507–09.

Broadnax references a violation of the Ex Post Facto Clause arising from the denial of parole. He does not identify any change in the law or relevant regulations which in any way affected the decision to deny parole. Dismissal of this claim is appropriate "because parole is [and has always been] a discretionary decision of the [Alabama Board of Pardons and Paroles] and [Broadnax's] punishment, [a] life term[] of imprisonment, was not increased by the denial of parole." *Harrell*, 479 F. App'x at 237.

To the extent the amended complaint can be construed to challenge the set-off of Broadnax's parole consideration date for a potential of five years upon retroactive

application of amended administrative regulations when prior regulations allowed parole consideration at more frequent intervals as violative of the Ex Post Facto Clause, this claim likewise provides no basis for relief.  Decisions with respect to whether a parole regulation violates the Ex Post Facto Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis.  *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000).  In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment."  *Harris*, 217 F.3d at 1350 (quoting *Garner v. Jones*, 529 U.S. 244, 25 (2000)); *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001).

In *Garner*, the Court addressed whether an amended rule increasing parole consideration hearings from every three years to every eight years in Georgia violated the Ex Post Facto Clause.  The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstances or new information.  *Garner*, 529 U.S. at 256.  A determination of whether retroactive application of a particular change in a law or regulation governing

parole respects the prohibition of ex post facto legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Id.* at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253. "The Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001).

Alabama law gives the Alabama Board of Pardons and Paroles broad discretion in determining whether an inmate should be granted parole, *Ala Code* § 15-22-26, "and when and under what conditions" parole will be granted. *Ala. Code* § 15-22-24(a). Applicable state law also requires that the parole board consider the public interest in every case. *Ala. Code* § 15-22-26. This unconditional discretion, however, does not displace the protections of the Ex Post Facto Clause. *Garner*, 529 U.S. at 250. The proper inquiry in cases challenging retroactive application of new parole policies or statutes is whether the retroactive change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id*. (internal quotation marks and citation omitted).

The rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama

24

Board of Pardons and Paroles.  In 2001, the parole board adopted the rules and regulations currently in effect.  The board amended these rules and regulations in 2004.  Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*, vests the Board with discretion to determine whether to set the case for reconsideration and, if reconsideration is allowed, "when the case shall next be docketed for consideration, not to exceed five years." [The initial operating procedure governing the scheduling of parole consideration dates, *Ala. Adm. Code* § 640-X-2.02(8) (1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial."  The increase in the reset date from no "more than three years" from denial of parole to the current five-year maximum originally occurred in adoption of the 2001 rules and regulations at Article 6, § 11.  The parole board retained the five-year set off in its 2004 amendments.]  Article 2, § 7, provides that, if the Board "scheduled the next consideration three years or more after denial [of parole] . . . , the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole."  The opportunity for an expedited parole review is likewise available to qualified inmates.  Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown and circumstances bearing on [the inmate's] probability to succeed on parole, not merely because the prisoner is following the rules in prison."  Thus, the rule changes are designed to facilitate better exercise of the Board's discretion. *Garner*, 529 U.S. at 254-55.

*Carey v. Wynn*, 2:07-CV-1106-MHT-TFM (M.D. Ala.) - *Doc. No. 104 (Recommendation of the Magistrate Judge)* at 23-24 (internal citations to record and footnotes omitted), adopted as opinion of the court, *Doc. Nos. 108 and 109*, affirmed on appeal June 10, 2011, *Doc. No. 116*.

It is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Broadnax

nor increase the level of risk that he will serve a longer term of imprisonment. Specifically, prior to this change, the parole board never guaranteed Broadnax that he would at any time be unconditionally released before completion of his life sentence. Additionally, eighteen months after a denial of parole Broadnax has the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for parole and could be scheduled for consideration at an earlier date. Hence, even if risk of an increased term of incarceration develops in Broadnax's case, he may, upon a showing of "good cause . . . and circumstances bearing on his probability to succeed on parole," seek an earlier review before the five-year interval expires. Article 2, § 1, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*.

Broadnax has presented no evidence and the court is unaware of any evidence which demonstrates that the regulations at issue create a significant risk of increased punishment for Broadnax. Moreover, Broadnax possesses the ability to petition the parole board for an earlier parole consideration date. Based on the foregoing, the court concludes that the change about which Broadnax complains did not lengthen his actual term of imprisonment. Thus, Broadnax's challenge to the potential increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. *Garner*, 529 U.S. at 253-56; *Olstad v. Collier*, 326 F. App'x 261 (5th Cir. 2009) (retroactive imposition by parole board of changes in Texas

parole policy allowing a potential five year set-off until prisoner's "next parole review

presents no ex post facto violation because its effect on increasing [plaintiff's] punishment

is merely conjectural . . . .  The Board is vested with discretion as to how often to set

[plaintiff's] date for reconsideration, with five years for the maximum; the Board is also

permitted to adjust subsequent review dates and conduct a special review if [plaintiff's]

status changes."); *Creel v. Kyle*, 42 F.3d 955, 957 (5th Cir.), *cert. denied*, 514 U.S. 1070

(1995) (change in rules that lengthen period of time between parole reconsideration

hearings applied retroactively by parole board not violative of the Ex Post Facto Clause).

The defendants are therefore entitled to summary judgment on this claim.

### E.  Conspiracy

Broadnax alleges that defendants Barber and Thomas engaged in a conspiracy with

defendants Wynne, Longshore and Walker which resulted in the denial of parole.

"Conspiring to violate another person's constitutional rights violates section 1983. " *Rowe*

*v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citing *Dennis v. Sparks*,

449 U.S. at 27, 101 S. Ct. at186 (1980); *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir.

1988), *overruled in part on other grounds by Whiting v. Traylor*, 85 F.3d 581, 584 n.4

(11th Cir. 1996)).

> To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the
> parties "reached an understanding" to deny the plaintiff his or her rights
> [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v.*
> *Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111

S. Ct. 2053, 114 L. Ed. 2d 459 (1991) . . . .  [T]he linchpin for conspiracy is agreement . . . .

*Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied*, 506 U.S. 832 (1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants . . . .  For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'"  *Rowe*, 279 F.3d at 1283-84 (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).  Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy.  *Harvey*, 949 F.2d at 1133.

The parole defendants deny they conspired with any other party to violate Broadnax's constitutional rights and, instead, argue that they acted appropriately at all stages of the parole consideration process.  Defendants Thomas and Barber likewise deny acting in concert with members of the parole board to deny Broadnax his constitutional rights.  The court has carefully reviewed the pleadings filed by the plaintiff.  There is a total lack of evidence to support Broadnax's suppositious theory that the defendants engaged in various conspiratorial acts against him.  Specifically, Broadnax has failed to present any evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy."  *Bailey*,

28

956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.  At best, Broadnax's assertions are self-serving, purely conclusory allegations which fail to assert those material facts necessary to sufficiently plead a conspiracy between the defendants.  *Harvey*, 949 F.2d 1133; *Fullman*, 739 F.2d at 556-57.  Thus, the motions for summary judgment filed by the defendants are due to be granted regarding this claim.  *Bailey*, 956 F.2d at 1122.

### F.  Conditions of Confinement

Broadnax complains that due to the denial of parole he has endured "cruel and unusual [punishment involving] an unbalance[d] diet, lack of security and . . . a hostile environment" during his confinement at Ventress.  *Amended Complaint - Doc. No. 1* at 3.  It is undisputed that defendants Wynne, Longshore, Walker and Barber are not in any way responsible for the conditions about which Broadnax complains and these defendants are therefore entitled to summary judgment with respect to these claims.  Defendant Thomas avers that he is not involved with the daily operation of Ventress, has no personal knowledge of the matters alleged in the amended complaint and cannot be held liable for the conditions at this facility based on a theory of respondeat superior or vicarious liability.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983

for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability.).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677. Thus, liability can attach to defendant Thomas only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation."  *Cottone*, 326 F.3d at 1360.

To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Thomas, Broadnax must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Thomas] directed the [facility's staff]

to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Broadnax has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Thomas directed the other officials to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action. In addition, Broadnax has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Thomas failed to take corrective action. Finally, the undisputed evidentiary materials submitted demonstrate that the challenged conditions did not occur pursuant to a policy enacted by defendant Thomas. Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted. Summary judgment is therefore due to be granted in favor of defendant Thomas.

In addition, the court finds that the specious allegations with respect to conditions at Ventress provide no basis for relief. Although overcrowding and under staffing exists in the Alabama prison system, these facts, standing alone, are not dispositive of the issues before this court. Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes those conditions of

confinement which involve the wanton and unnecessary infliction of pain.  *Id*. at 346.

Specifically, it is concerned with "deprivations of essential food, medical care, or

sanitation" or "other conditions intolerable for prison confinement."  *Id*. at 348 (citation

omitted).

> "[T]he Constitution does not mandate comfortable prisons."  *Id.* at 349, 101
> S.Ct. at 2400.  If prison conditions are merely "restrictive and even harsh,
> they are part of the penalty that criminal offenders pay for their offenses
> against society."  *Id.* at 347, 101 S.Ct. at 2399.  Generally speaking, prison
> conditions rise to the level of an Eighth Amendment violation only when
> they "involve the wanton and unnecessary infliction of pain."  *Id.*

*Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  Although, "the Constitution

'does not mandate comfortable prisons' . . . neither does it permit inhumane ones."  *Farmer*

*v. Brennan*, 511 U.S. 825, 832 (1994) (internal citation omitted); *Rhodes*, 452 U.S. at 345-

46 (Conditions may not be "barbarous" nor may they contravene society's "evolving

standards of decency.").  "[A] prisoner's mere discomfort, without more, does not offend

the Eighth Amendment."  *Crosby*, 379 F.3d at 1296.

A prison official has a duty under the Eight Amendment to "provide humane

conditions of confinement; prison officials must ensure that inmates receive adequate food,

clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the

safety of the inmates.'"  *Farmer*, 511 U.S. at 832  (quoting *Hudson v. Palmer*, 468 U.S.

517, 526-27 (1984)); *Helling*, 509 U.S. at 31-32.  To demonstrate an Eighth Amendment

violation regarding conditions of confinement, a prisoner must satisfy both an objective

32

and a subjective inquiry.  *Farmer*, 511 U.S. at 834.  In *Farmer*, the Court identified both

objective and subjective elements necessary to establish an Eighth Amendment violation.

With respect to the requisite objective elements, an inmate must first show "an objectively

substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official

is aware of this substantial risk, the official must react to this risk in an objectively

unreasonable manner."  *Marsh*, 268 F.3d 1028-29.  As to the subjective elements,

> the official must both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he must also draw
> the inference . . . .  The Eighth Amendment does not outlaw cruel and
> unusual "conditions"; it outlaws cruel and unusual "punishments." . . . *[A]n*
> *official's failure to alleviate a significant risk that he should have*
> *perceived but did not, while no cause for commendation, cannot under our*
> *cases be condemned as the infliction of punishment*.

*Farmer*, 511 U.S. at 837-38 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364

(11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have

perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491

(11th Cir. 1996) (same).  The conduct at issue

> must involve more than ordinary lack of due care for the prisoner's interests
> or safety . . . .  It is *obduracy and wantonness, not inadvertence or error in*
> *good faith*, that characterize the conduct prohibited by the Cruel and Unusual
> Punishments Clause, whether that conduct occurs in connection with
> establishing conditions of confinement, supplying medical needs, or restoring
> official control over a tumultuous cellblock.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

The living conditions within a correctional facility will constitute cruel and unusual

33

punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency . . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id.* at 347. To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id.* at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb Cnty.*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb Cnty.*, 475 U.S. 1096 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). The court's consideration of whether the totality of a plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that

> *[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

34

*Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) (emphasis in original).

A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324-25, 115 L. Ed. 2d 271 (1991) . . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). As the foregoing makes clear, "[m]erely negligent failure to protect an inmate . . . does not justify liability under section 1983." *Id*. Thus, in order to survive summary judgment on any claim grounded in deliberate indifference, Broadnax is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Carter v.*

*Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To be deliberately indifferent, Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"' . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also 'draw that inference.'" (internal citations omitted)).

Broadnax has failed to present any evidence that the conditions about which he complains presented a severe or extreme condition that posed an unreasonable risk of serious damage to either his health or safety. In addition, Broadnax has not alleged that he suffered requisite harm as a result of the conditions referenced in the amended complaint. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (holding that a prisoner must prove that the prison condition he complains of is sufficiently serious and "extreme" to violate the Eighth Amendment). Broadnax's mere subjective beliefs and conclusory allegations regarding the constitutionality of these conditions do not create a genuine dispute of material fact and, as such, "are insufficient to withstand summary judgment." *Holifield*, 115 F.3d at 1564 n.6. Accordingly, the court concludes that alleged deficiencies in security measures and the nutritional adequacy of food served at Ventress, absent any supporting facts, do not rise to the level of an Eighth Amendment violation. *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) ("'Inmates cannot expect the

amenities, conveniences and services of a good hotel.'" (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)).  Although the conditions may have been uncomfortable, inconvenient, unpleasant and/or objectionable, the record is devoid of evidence to establish that they violated the Eighth Amendment.  *Chandler v. Baird*, 926 F.2d at 1289 (11th Cir. 1991).

For all of the above reasons,  summary judgment is due to be granted in favor of defendant Thomas on the conditions claims.  *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-50.

## VII.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 9, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District

37

Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 26th day of January, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE